UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**UNITED STATES OF AMERICA**,
*Plaintiff*,

v.                                                         **Case No. 21-20060-JAR**

**DANIEL AUBREY JENKINS,**
*Defendant*.

**OBJECTIONS TO GOVERNMENT'S PROPOSED JURY INSTRUCTIONS**

Counsel for Kaaba Majeed, Yunus Rassoul, Randolph Rodney Hadley, and Dana Peach have conferred and jointly file these objections to the government's proposed jury instructions filed at D.E. 338. We also jointly file an additional objection to the joint proposed jury instructions that the government filed at D.E. 337.[1]

Two initial points. First, the government's proffered instructions repeatedly cite the instructions given in *United States v. Kaufman*, No. 5:04-cr-40141, implying that those instructions were approved by the Tenth Circuit. They were not. There was only one instructional issue decided in the Tenth Circuit in the *Kaufman* case, and that was on plain error review. *United States v. Kaufman*, 546 F.3d 1242, 1260

---

[1] The government and defense counsel conferred prior to the government filing the joint proposed instructions. In doing so, defense counsel inadvertently included one instruction in the list of those to which the defense had no objections. That instruction is addressed herein following objections to the government's proposed instructions.

(10th Cir. 2008) (alleging the district court committed plain error when defining "labor" and "services"). Prevailing on plain error is a "steep climb," and the *Kaufman* court decided only that the defendants had not made it because there was no controlling precedent that directed resolution of the argument in his favor. *United States v. Egli*, 13 F.4t. 1139, 1143 (10th Cir. 2021); *United States v. Fagatele*, 944 F.3d 1230, 1239 (10th Cir. 2019) (Plain error requires that a litigant "demonstrate either that this court or the Supreme Court has resolved these matters in his favor").

Second, the government's proposed instructions repeatedly cite cases: (1) from other jurisdictions (2) involving different sets of facts, and (3) resemble closing argument more than jury instructions. Evidence that was sufficient in an unrelated case will not be necessarily sufficient here. The Court should reject the government's editorializing and provide the jury with a simple and concise statement of the elements. *Chums, Ltd. V. Snugz/USA, Inc.*, 1995 WL 503975, at 2 (10th Cir. 1995) (unpublished) (emphasis in original) ("All instructions should be short, concise, understandable, and *neutral* statements of law.") (unpublished) (emphasis in original); *United States v. Martin*, 274 F.3d 1208, 1210 (8th Cir.2001) ("Jury instructions should be "accurate, clear, neutral, and non-prejudicial."). In most instances, the Tenth Circuit's pattern instructions do all the necessary work.

When we refer to government instructions, we are referring to the page on which the instruction begins.

**Instruction 2: Conspiracy—Existence of Lawful and Unlawful Objectives**

We object to the entirety of the government's conspiracy instruction because it misstates the law. We can find no binding authority (or any authority) for the propositions set out below.

> **Conspiracy—Existence of Lawful and Unlawful Objectives[5]**
>
> While the government must prove that there was an unlawful object to the conspiracy, the government need not prove that the conspiracy had only a criminal purpose. In other words, it is not a defense to the conspiracy charge that the defendants may have had legal objectives as well as illegal objectives.
>
> ==Any conspiracy may have several objectives, but if any one of them, even if it is only a secondary objective, is to violate federal law, then the conspiracy is unlawful.==

A Westlaw search of the Supreme Court, Federal Courts of Appeal, and Federal District Court databases for "conspiracy" /s "legal objectives as well as illegal objectives" turned up no cases. Nor did a Westlaw search for "conspiracy" /s "legal objectives." A Westlaw search of the same databases for "conspiracy" /s "secondary objective" disclosed two cases. The first is *United States v. Cruz*, 127 F.3d 791, 804 (9th Cir. 1997) (Hall, J. concurring), *overruled by United States v. Jimenez Recio*, 537 U.S. 270 (2003) (holding a conspiracy does not automatically terminate because the government has defeated its object). The concurring opinion in *Cruz* considered a statute of limitations issue, and the judge opined that the statute continued to run while "the primary objective of the conspiracy had been

3

defeated, not accomplished, before the secondary objective of receiving payment was sought." *Id.* The second is *United States v. Aranjo*, 603 F.3d 112 (1st Cir. 2010), which merely mentioned that the government had charged a secondary conspiratorial objective: "Probably the government charged the secondary objective in order to ensure that the rich evidence of Aranjo's falsification and obstruction reached the jury[.]" *Id.* at 117. Neither case supports the government's proffered instruction. There is no such thing as a conspiracy with a lawful objective; if the purpose is lawful, it is not a conspiracy. *United States v. Scott*, 37 F.3d 1564, 1576 (10th Cir. 1994) (internal citations omitted) ("The jury was required to find the conspiracy had illegal objectives").

The government's cited authority for the instruction was the district court's instructions in *United States v. Kaufman*, No. 5:04-cr-40141. We have no doubt the instruction was given, but the Tenth Circuit decision in *United States v. Kaufman*, 546 F.3d 1242, 1259-63 (10th Cir. 2008), cited in the government's footnote, doesn't address the propriety of this instruction. The portion of the opinion the government cites concerns the district court's "no eye contact" order and a plain error review of the district court's definitions of "labor" and "services." *Kaufman*, 546 F.3d 1259-62. We don't see any mention of conspiracy law. Perhaps we've missed something; we asked the government but haven't heard back yet. In any case, we see nothing to recommend the instruction on page two as an accurate statement of the law.

Finally, it is not enough for the government to prove that defendants merely conspired to violate federal law. The government must prove that defendants

4

conspired to commit forced labor, specifically. Instructing the jury that "if any one of [the conspiracy's objectives] . . . is to violate federal law, then the conspiracy is unlawful" risks the jury finding defendants guilty of a conspiracy to accomplish an unlawful objective not alleged in the indictment.

### Instruction 3: Acts and Statements of Co-Conspirators

We do not object to this instruction. But because the instruction comes from the Third Circuit, it is incomplete. The "Tenth Circuit is unique, at least among federal jurisdictions, in requiring the inclusion of 'interdependence' between or among conspirators as an essential element of conspiracies charged under 18 U.S.C. § 371 and § 21 U.S.C. 846." Comment to Tenth Circuit Pattern Instruction 2.19. "Interdependence, as an essential element of 371 conspiracy, is an innovation of Tenth Circuit jurisprudence that evolved during the 1990s." *Id.* So, we propose to add the following language concerning interdependence to ensure the jury is fully instructed that in determining whether a conspiracy was in existence at the time an alleged conspirator did or said something, it must consider whether interdependence existed between the alleged co-conspirators at that time.

**When evaluating whether an alleged conspiracy was in existence at any particular time, you must consider whether the required element of interdependence existed between the alleged co-conspirators at that time. Interdependence is present when each alleged coconspirator depends on the operation of each link in the chain to achieve the common goal.**

Authority: *United States v. Evans*, 970 F.2d 663, 670 (10th Cir. 1992).

## Instruction 4: Withdrawal

We object to the confusing, argumentative, and long-winded way in which the government discusses withdrawal. The Court should use Tenth Circuit Pattern Instruction 2.22:

> **The defendants have raised the affirmative defense of withdrawal from the conspiracy. If you have first found that a defendant was a member of the conspiracy charged in Count 1, then you must determine whether a defendant thereafter withdrew from the conspiracy. In order to find that a defendant withdrew from the conspiracy, you must be convinced that a defendant has proven by a preponderance of the evidence that he took an affirmative step to defeat the purpose of the conspiracy, either by reporting to the authorities or communicating to his coconspirators that he was no longer participating in the conspiracy.**

**Instruction 6: Offense Instruction – Counts Two through Eight (Forced Labor)**

We object for the reasons set out in our memorandum explaining why § 1589 sets out elements, not means. (D.E. 335).

We also object to the government's failure to include "knowingly" in the instruction. Neither of the first two element instructions includes the word "knowingly." That's contrary to ordinary English and could well mislead the jury. Courts "ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element." *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009). That's because as "a matter of ordinary English grammar, it seems natural to read the statute's word 'knowingly' as applying to all the subsequently listed elements of the crime." *Id*. For example, "if a bank official says, 'Smith knowingly transferred the funds to his brother's account,' we would normally understand the bank official's statement as telling us that Smith knew the account was his brother's." *Id*. at 651. And "a statement that does not use the word 'knowingly' may be unclear about just what Smith knows." *Id*.

But "[i]f the bank official says, 'Smith sent a bank draft to the capital of Honduras,' he has expressed next to nothing about Smith's knowledge of that geographic identity." *Id*. Including "knowingly" in the elements instructions matters a great deal. Failing to do so distorts the instruction by diluting the *mens rea* requirement, as the *Flores-Figueroa* court's explanation of ordinary usage demonstrates. The fact that "knowingly" appears in a later instruction changes nothing, because that instruction doesn't tell the jury what "knowingly" modifies; it

8

just defines the word. This is an easy problem to solve. The Court should insert the phrase "knowingly" after "defendant" in the instructions for the first and second elements.

Additionally, we object to the use of "victim" in this instruction. Whether the individuals named in the indictment are victims is for the jury to decide. Instead, we propose using "person" (or "that person," when necessitated by the structure of the sentence) which is the language used in § 1589.

Finally, we propose that a separate instruction be given for each count to assist the jury in separately considering the correct alleged victim, dates of offense, and defendants for each count.

## Instruction 7: Identity of the Victims

We object to identifying MV-9 as a minor victim. The government has conceded he is not. (D.E. 206 at 8 n. 22). We also object to use of the word "victim," which assumes a fact the jury must find.

We also defer consideration of the necessity of this instruction until the jury instructions conference. Having a separate instruction for each count of forced labor in which the count and the alleged victim is clearly linked may remove the need for this instruction.

**Instruction 8: First Element – Forced Labor: Provides or Obtains Labor or Services**

We object to the government's failure to include "knowingly" before "defendant" in this proposed instruction, for the same reasons as above.

We also object to the government's substantially overbroad definitions of "labor" and "services".

> I instruct you that, in considering this element, the words "provide" and "obtain" are to be given their ordinary meanings.[15]
> "Labor" means the expenditure of physical or mental effort. "Services" means conduct or performance that assists or benefits someone or something.[16]

Under these definitions, chewing is "labor." Thinking about chewing is "labor." Giving a compliment is a "service." Feeding a squirrel is a "service." Compare *Holy Trinity Church v. United States*, 143 U.S. 457, 463 (1892) (A Congressional act prohibiting the importation of labor "reaches only to the work of the manual laborer, as distinguished from that of the professional man. No one reading such a title would suppose that congress had in its mind any purpose of staying the coming into this country of ministers of the gospel, or, indeed, of any class whose toil is that of the brain.").

The Court should instruct that "labor" and "services" are to be given their ordinary meanings. *Kaufman* says that "the jury instructions' definitions of 'labor' and 'services' set forth the ordinary meaning of those terms." 546 F.3d 1242. A

11

"district court need not define a term when its use in jury instructions comports with its ordinary meaning." *United States v. Robinson*, 435 F.3d 1244, 1250 (10th Cir. 2006), quoting *Miller v. Neathery*, 52 F.3d 634, 638 (7th Cir. 1995); *id.* at 1249 ("A significant line of cases holds that it is not error—plain or otherwise—to fail to define a statutory term or phrase that carries its natural meaning.")

**Instruction 9: Second Element – Forced Labor: Prohibited Means**

We object for the reasons set out in our memorandum explaining why § 1589 sets out elements, not means. (D.E. 335).

We object to the government's failure to include "knowingly" in the instruction, for the same reasons as described above.

We object to the government's use of the reasonable person standard to determine criminal liability.

> The term "serious harm" means any harm, whether physical or non-physical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a <mark>reasonable person</mark> of the same background and in the same circumstances as the victim to perform or to continue performing labor or services in order to avoid incurring that harm.[17]

The Supreme Court has consistently rejected this approach. "Having liability turn on whether a 'reasonable person' regards the communication as a threat—regardless of what the defendant thinks—reduces culpability on the all-important element of the crime to negligence." *Elonis v. United States*, 575 U.S. 723, 737–38 (2015) (cleaned up) ("Elonis's conviction, however, was premised solely on how his posts would be understood by a reasonable person. Such a 'reasonable person' standard is a familiar feature of civil liability in tort law, but is inconsistent with the conventional requirement for criminal conduct—awareness of some

13

wrongdoing."); *Id.* at 740 ("The jury was instructed that the Government need prove only that a reasonable person would regard Elonis's communications as threats, and that was error."); *Ruan v. United States*, 597 U.S. 450, 452 (2022) ("[T]he Government's standard would turn a defendant's criminal liability on the mental state of a hypothetical 'reasonable' doctor, rather than on the mental state of the defendant himself or herself. The Court has rejected analogous suggestions in other criminal contexts.")

We object to the language on pages 11 and 12 as argumentative and a misstatement of the law, because it eliminates the required connection between the act and forced labor. The "by means of" language in § 1589 is "a significant textual limitation" on the statute's reach. *Loughrin v. United States*, 573 U.S. 351, 362 (2014). When Congress uses "by means of," it means that the defendant's act "naturally induced" the result. Examining § 1589, the Ninth Circuit recognized that, "the phrase 'by means of' refers to familiar principles of causation and requires a proximate causal link between one or more of the unlawful means enumerated in § 1589(a) and the labor actually obtained." *Martinez-Rodriguez v. Giles*, 31 F.4th 1139, 1155 (9th Cir. 2022). The government's proffered instructions delink the defendant's act and forced labor.

14

**Joint Instruction 10: Sexual or Physical Abuse, or Kidnapping, of a Child**

We object to the definition of physical abuse as unduly broad. The definition proposed by the government includes no intent requirement, sweeping in injuries that may result from wholly accidental or inadvertent conduct. And it includes *de minimus* injuries that do not rise to the level of abuse.

Because § 3283 does not define physical abuse, the court must apply the "ordinary, everyday meaning." *United States v. Wagner*, 951 F.3d 1232, 1256 (10th Cir. 2020). This meaning includes "both the specific context in which the word is used and the broader context of the statute as a whole." *United States v. Theis*, 853 F.3d 1178, 1181 (10th Cir. 2017). In *United States v. Kepler*, 2021 WL 4027203 (N.D. Okla. Sept. 3, 2021) (unpublished), the district court followed the lead of several circuit courts in analyzing the language of § 3283 "in light of the definitions in 18 U.S.C. § 3059." *Id.* at 4. Section 3059 defines "child abuse as "the physical . . . injury . . . or negligent mistreatment of a child." 18 U.S.C. § 3059(3).[2] "'[P]hysical injury' includes lacerations, fractured bones, burns, internal injuries, severe bruising, or serious bodily harm." § 3059(4). "'[N]egligent mistreatment' means the failure to provide, for reasons other than poverty, adequate food, clothing, shelter, or medical care so as to seriously endanger the physical health of the child[.]" § 3059(11). And excluded from the definition of child abuse is "discipline administered by a parent or legal guardian, to his or her child provided it is

---

[2] This definition of child abuse also includes sexual abuse, which is not the subject of our objection, and "mental injury," which is not included in § 3283.

reasonable in manner and moderate in degree and does not constitute cruelty." § 3059(12).

We also object to this instruction's repeated references to "a child." For the extended statute of limitations to apply to a particular count, the government must prove that the alleged offense involved the physical or sexual abuse or kidnapping of the person identified in that count of the indictment, not just that any child experienced such abuse.

Defendants have worked to consolidate their objections to the proposed instructions. We reserve the right to request additional instructions and raise additional objections based on the evidence presented at trial.

Respectfully submitted,

s/ Kirk Redmond
KIRK REDMOND, #18914
First Assistant Federal Public
Defender 500 State Avenue, Suite 201
Kansas City, Kansas 66101
Telephone (913) 551-6712
Fax: (913) 551-6562
E-mail: Kirk_Redmond@fd.org

s/ Ellen Albritton
ELLEN ALBRITTON
Sup. Ct. No. 28978
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6170
Fax: (316) 269-6175
E-mail: Ellen_Albritton@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all interested parties.

s/Kirk C. Redmond<br>
Kirk C. Redmond #18914